# Supreme Court of Florida

_____

No. SC2024-1314
_____

**ADAM RICHARDSON,**
Petitioner,

vs.

**SECRETARY, FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION, et al.,**
Respondents.

October 10, 2024

COURIEL, J.

Adam Richardson, as a citizen and taxpayer, petitions this Court for a writ of quo warranto, a writ of mandamus, and all writs necessary to complete exercise of this Court's jurisdiction over conduct that, he alleges, interferes with the people's right to consider a proposed amendment to the Florida Constitution. He says the Governor, the Attorney General, and the Secretary of the Florida Agency for Health Care Administration (AHCA) have violated section 104.31, Florida Statutes (2024), in their advocacy against that amendment.

Applying traditional principles that govern the issuance of extraordinary writs, we deny the petition. We have jurisdiction. *See* art. V, § 3(b)(7)-(8), Fla. Const.

**I**

A general election will be held on November 5, 2024. Voting by mail is underway.

On April 1, our Court approved this summary of Amendment 4, entitled "Amendment to Limit Government Interference with Abortion," for placement on the ballot:

> No law shall prohibit, penalize, delay, or restrict abortion before viability or when necessary to protect the patient's health, as determined by the patient's healthcare provider. This amendment does not change the Legislature's constitutional authority to require notification to a parent or guardian before a minor has an abortion.

*Advisory Op. to Att'y Gen. re Limiting Gov't Interference with Abortion*, 384 So. 3d 122, 127 (Fla. 2024).

Petitioner characterizes certain of Respondents' actions since that time as unlawful interference with the vote on Amendment 4. As to Secretary Weida, he points to an AHCA webpage stating that Amendment 4 "Threatens Women's Safety" and "threatens to expose women and children to health risks." In addition to publishing this

- 2 -

webpage, he says, both Secretary Weida and AHCA posted links to it on their social media accounts. As to Governor DeSantis and Attorney General Moody, Petitioner takes issue with what he describes as their offices' involvement in a September 12 "Leader Call" with "Faith and Community Leaders" on the subject of "Your Legal Rights & Amendment 4's Ramifications." He directs the Court to an opinion piece by the Attorney General in which she states her opposition to Amendment 4, describing the amendment as misleading in several respects.

All this, Petitioner says, runs afoul of a law limiting the political activities of state, county, and municipal officers and employees. The relevant parts of that law say:

> (1) No officer or employee of the state, or of any county or municipality thereof, except as hereinafter exempted from provisions hereof, shall:

> (a) Use his or her official authority or influence for the purpose of interfering with an election or a nomination of office or coercing or influencing another person's vote or affecting the result thereof.

>    . . . .

>    . . . The provisions of paragraph (a) shall not be construed so as to limit the political activity in a general, special, primary, bond, referendum, or other election of any kind or nature, of elected officials or candidates for

public office in the state or of any county or municipality thereof; and the provisions of paragraph (a) shall not be construed so as to limit the political activity in general or special elections of the officials appointed as the heads or directors of state administrative agencies, boards, commissions, or committees or of the members of state boards, commissions, or committees, whether they be salaried, nonsalaried, or reimbursed for expense. . . . The provisions of paragraph (a) shall not be construed so as to limit the political activity in a general, special, primary, bond, referendum, or other election of any kind or nature of the Governor, the elected members of the Governor's Cabinet, or the members of the Legislature. . . .

. . . .

(3) Any person violating the provisions of this section is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

§ 104.31, Fla. Stat.

Respondents answer that this criminal prohibition does not contemplate private enforcement by writ of quo warranto. It is, rather, to be enforced by an official representative of the state: the attorney general, a statewide prosecutor, or a state attorney in the first instance, and supplementally by the Florida Election Commission as to civil remedies like fines and injunctive relief. *See* § 106.27, Fla. Stat. (2024). They deny that Petitioner has standing to seek quo warranto under our cases, which have never allowed

- 4 -

invocation of the writ by a citizen or taxpayer to enforce a criminal statute. Similarly, they reject the idea that Petitioner has any clear legal right under the statute to be vindicated by the writ of mandamus. And they say the petition fails on the merits because the statements at issue are exempted under the statute—which, in any event, has historically been understood by the Attorney General and the Florida Election Commission to prohibit only the corrupt use of official authority.

## II

Resolving this case requires us to look no further than the traditional scope of our extraordinary writs, for what Petitioner seeks, that scope does not include.

## A

Article V, section 3(b)(8) of the Florida Constitution says we "[m]ay issue writs of mandamus and quo warranto to state officers and state agencies."

We have identified as the writ of quo warranto's traditional purpose to "test the right of a person to hold an office of franchise or exercise some right or privilege the peculiar powers of which are derived from the state." *State v. Gerow*, 85 So. 144, 145 (Fla. 1920).

- 5 -

In its earliest applications, we described the writ as narrow and limited by its common law roots. *See, e.g.*, *State ex rel. Landis v. Prevatt*, 148 So. 578, 579 (Fla. 1933); 3 William Blackstone, *Commentaries* \*262 (under English common law, the writ was "for the king, against him who claims or usurps any office, franchise, or liberty"); *State v. Gleason*, 12 Fla. 190, 206 (1868) (the writ was "designed for the very purpose of protecting the sovereignty from invasion or [intrusion]").

"Since those early days, this Court has shifted its focus in quo warranto cases to question whether a state officer has improperly exercised a power or right derived from the State." *W. Flagler Assocs., Ltd. v. DeSantis*, 382 So. 3d 1284, 1286 (Fla. 2024) (citation and internal quotation marks omitted). "Through this lens, this Court has used the writ to test separation of powers issues, especially where one branch sues another, to settle claims over entitlement to an office, and to resolve disputes over the procedural mechanics of government." *Id.* And an "essential feature" of quo warranto is that it should be "used to challenge the authority to exercise a state power rather than the merits of the action." *Id.* at 1287.

It has always been an extraordinary writ, the issuance of which is a matter of discretion. And "[t]o inform its exercise of that discretion, a court 'may and should consider all the circumstances of the case.'" *Floridians Protecting Freedom, Inc. v. Passidomo*, 49 Fla. L. Weekly S206, S208 (Fla. Aug. 21, 2024) (quoting *City of Winter Haven v. State ex rel. Landis*, 170 So. 100, 108 (Fla. 1936)).

Petitioner would have us stray further from these principles than even our existing precedent would allow. For one thing, we have never held that the writ lies to compel the criminal prosecution of a state actor or to enable a private citizen to enforce a state criminal statute. It is hard to see how he asks us to do anything short of that, for the statute is express about what a violation of its requirements constitutes: "a misdemeanor of the first degree." § 104.31(3), Fla. Stat. It resides in chapter 104, which sets forth our election code and enumerates other acts prosecutable as violations of law. *See, e.g.*, §§ 104.041 (fraud in connection with casting a vote), .045 (vote selling), .061 (corruptly influencing voting), .16 (voting a fraudulent ballot), .21 (changing electors' ballots), Fla. Stat. (2024). That statutory context does not support Petitioner's hypothesis that the first paragraph of section 104.31 is

enforceable other than by state authorities. And the statute contains none of the traditional indicia for which we look when deciding if the Legislature has created a private right of action. *See Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 986 (Fla. 1994); *Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 852 (Fla. 2003); *Peoples Gas Sys. v. Posen Constr., Inc.*, 322 So. 3d 604, 608-09 (Fla. 2021).

What's more, Petitioner's grievances are at best only somewhat about Respondents' "authority to exercise a state power rather than the merits of the action." *W. Flagler Assocs.*, 382 So. 3d at 1287. He does not contend that the Secretary lacks authority to post on social media or manage a website for AHCA; that the Governor or Attorney General lacks authority to participate in a public conference with community leaders; or that the Attorney General lacks authority to issue a statement opposing a proposed constitutional amendment. To the extent there could be a judicial determination regarding the existence or nonexistence of an immunity, power, privilege, or right of these constitutional officers to make the specific statements at issue in light of section 104.31, it is not Petitioner's to seek by writ of quo warranto.

## B

For similar reasons, we deny the petition for a writ of mandamus. Entitlement to that extraordinary relief is established where "the petitioner . . . [has] a clear legal right to the requested relief, the respondent . . . [has] an indisputable legal duty to perform the requested action, and the petitioner . . . [has] no other adequate remedy available." *Huffman v. State*, 813 So. 2d 10, 11 (Fla. 2000); *see also Topps v. State*, 865 So. 2d 1253, 1257 (Fla. 2004) ("Since the nature of an extraordinary writ is not of absolute right, the granting of such writ lies within the discretion of the court. Therefore, extraordinary writs may be denied for numerous and a variety of reasons, some of which may not be based upon the merits of the petition.").

Petitioner seeks relief far afield of the traditional scope of mandamus. He challenges a fundamentally discretionary exercise of executive power on the ground that it transgresses a criminal or regulatory prohibition. He has established no clear legal right as to which he can insist that any Respondent has failed in his or her duty to perform, and, in light of the statutes providing for criminal prosecution or civil enforcement, cannot show that there is no other

- 9 -

remedy for the alleged wrong.  *See Huffman*, 813 So. 2d at 11;

*Towle v. State ex rel. Fisher*, 3 Fla. 202, 209 (1850).  No further

relief under article V, section 3(b) is required to complete the

exercise of our jurisdiction.  *See, e.g.*, *Williams v. State*, 913 So. 2d

541, 543 (Fla. 2005); *St. Paul Title Ins. Corp. v. Davis*, 392 So. 2d

1304, 1305 (Fla. 1980).

### III

The petition is denied.  No rehearing will be permitted.

It is so ordered.

MUÑIZ, C.J., and CANADY, GROSSHANS, and SASSO, JJ., concur.
FRANCIS, J., concurs with an opinion, in which SASSO, J.,
concurs.
LABARGA, J., concurs in result.

FRANCIS, J., concurring.

The majority correctly denies the petition for the extraordinary

writ of quo warranto, and I agree with all the reasons expressed

therein.  I only write to point out that this case, in my mind, stands

as the quintessential example of a petition availing itself of the

runaway nature of our quo warranto precedent.  *See Floridians*

*Protecting Freedom, Inc. v. Passidomo*, 49 Fla. L. Weekly S206, S208

(Fla. Aug. 21, 2024) (Francis, J., concurring); *Worrell v. DeSantis*,

386 So. 3d 867, 872 (Fla. 2024) (Francis, J., concurring in result).

In my view, this petition is an attempt to extend *Whiley v. Scott*, 79 So. 3d 702, 706 (Fla. 2011), and further untether the writ of quo warranto "from its common law moorings." *W. Flagler Assocs., Ltd. v. DeSantis*, 382 So. 3d 1284, 1286 (Fla. 2024). At some point, this Court will need to address *Whiley* head-on. Today, however, we have not yet reached that point.

SASSO, J., concurs.

Original Proceeding – Quo Warranto

Adam Richardson, Lake Worth, Florida,

    for Petitioner

Ashley Moody, Attorney General, Henry C. Whitaker, Solicitor General, Daniel William Bell, Chief Deputy Solicitor General, Alison E. Preston, Deputy Solicitor General, and Myles Sean Lynch, Assistant Solicitor General, Office of the Attorney General, Tallahassee, Florida,

    for Respondents, Jason Weida, in his official capacity as Secretary of the Agency for Health Care Administration, Ron DeSantis, in his official capacity as the Governor of the State of Florida, and Ashley Moody, in her official capacity as the Attorney General of the State of Florida,

Mathew D. Staver, Anita L. Staver, Horatio G. Mihet, and John T. Stemberger of Liberty Counsel, Orlando, Florida,

    for Amicus Curiae Liberty Counsel Action and Liberty Counsel